# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# CENTRAL DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 7 |
| PETER M. VENUTO, ) | Case No. 16-41070-EDK |
| ) | |
| Debtor ) | |
| ) | |

### MEMORANDUM OF DECISION

Before the Court is a motion filed by the debtor in this Chapter 7 bankruptcy case requesting a finding of contempt and the imposition of sanctions against a creditor holding a claim that arose prior to the commencement of the debtor's case.  Through the motion, the debtor seeks an award of damages for the creditor's alleged violation of the injunction imposed by 11 U.S.C. § 524(a) against any attempt to "collect . . . [a discharged] debt as a personal liability of the debtor." Resolution of the motion requires the Court to determine whether the debt at issue was excepted from the debtor's discharge pursuant to 11 U.S.C. § 523(a)(3) as having been "neither listed nor scheduled" in the bankruptcy case.

I.    FACTS AND TRAVEL OF THE CASE

The factual findings contained in this Memorandum are based on the parties' testimony, the parties' joint pretrial stipulation, the admitted evidence, and the Court's own records.[1]  *See LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.),* 196 F.3d 1, 8 (1st Cir. 1999).

---

[1] As a result of the dangers presented by the COVID-19 pandemic, in accordance with Federal Rule 43(a), made applicable by Bankruptcy Rule 9017, compelling circumstances existed that constituted good cause to require that all aspects of the trial proceed by video transmission rather than in person.  On September 14, 2020, a trial was conducted by video using the Zoom.gov videoconferencing platform.

On June 20, 2016, Peter M. Venuto (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code").[2]  Several years prior to the bankruptcy filing, the Debtor was involved in a business relationship with Erich AmRhein ("AmRhein").  Unfortunately, that relationship went awry.  In October 2011, the Debtor and AmRhein joined forces to make a profit in the rock crushing business.  AmRhein supplied the deposit for a rock crushing machine while the Debtor took charge of the task of actually crushing the rocks.  AmRhein alleges that he was entitled to revenues from the business but that certain checks provided to him by both the Debtor and a business wholly owned by the Debtor (totaling approximately $109,000) were returned either for insufficient funds or because the accounts on which they had been drawn were closed.

In addition to the rock crushing business, the parties had at least one other financial link.  At some point prepetition, AmRhein also became the holder of a mortgage on the Debtor's property located at 3 Ronald Road in Sudbury, Massachusetts (the "Mortgage").  Exactly how AmRhein came to hold the Mortgage is not clear, but it appears that AmRhein, acting through a trust, purchased an existing mortgage debt on the property.

On the list of creditors filed in the bankruptcy case (the "creditor matrix"), the Debtor included "Erik Hans Amrhein [sic], P.O. box [sic] A, Natick, MA 01760."  ECF No. 8, June 28, 2016.  On his Schedule D: Creditors Who Have Claims Secured by Property, at entry number 2.2, the Debtor included the following information:

Creditor's Name: **Erik Hans Amrhein/Francesco Martinez**

Number, Street, City, State & Zip Code: **P.O. box A Natick, MA 01760**

Amount of Claim: **$2,000,000.00**

---

[2] *See* 11 U.S.C. §§ 101 *et seq.*  All statutory references are to provisions of the Bankruptcy Code unless otherwise stated.

Value of collateral that supports this claim: **$1,200,000.00**

ECF No. 17, July 15, 2016.[3]  The Debtor indicated that the claim was disputed.  The nature of the lien was left blank.  Schedule D does not ask or provide space for any additional information, and none was supplied.

While Schedule E/F: Creditors Who Have Unsecured Claims was the more appropriate schedule on which to include the unsecured debt[4] owed to AmRhein on account of the rock crushing business and dishonored checks, the Court finds that the entry at number 2.2 on Schedule D was intended by the Debtor to include *both* the secured Mortgage debt and the unsecured non-Mortgage debt owed to AmRhein.[5]  On cross examination, when presented with a copy of his Schedule D and asked whether "entry 2.2. relates completely to a mortgage debt that you allegedly owed to Mr. AmRhein," the Debtor answered, "According to this, it looks that way, yes."  Trial Tr. 64:17-19.  Regardless of how it may have "looked," however, the Court finds, in keeping with the remainder of the Debtor's consistent testimony, that the Schedule D entry was intended by the

---

[3] The Debtor explained that the claim was included in the names of both AmRhein and Martinez due to some minor confusion as to the ownership of the Mortgage.  At the meeting of creditors held pursuant § 341 of the Code (the "341 meeting"), the Debtor testified that Martinez "put up the money" to purchase the Mortgage.  Sept. 15, 2020 Trial Tr. 74:1-2.  At the evidentiary hearing, however, the Debtor testified that the Mortgage debt was owed to AmRhein.  AmRhein has pointed to this discrepancy as evidence of the Debtor's lack of credibility.  However, this inconsistency was easily explained by the Debtor – the Debtor was aware that Martinez and AmRhein had business dealings and believed that Martinez was "a trustee of Mr. AmRhein's business affairs."  Trial Tr. 22:21-22.  AmRhein himself clarified at trial that Martinez was the trustee of the trust through which the Mortgage was purchased.  Accordingly, the Court does not find that the Debtor's marginal confusion on the issue renders his testimony on the matter (or any other matter) not credible.

[4] The terms "debt" and "claim" are used interchangeably in this Memorandum.  The Bankruptcy Code defines a claim as a "right to payment" or a "right to an equitable remedy for breach of performance," 11 U.S.C. § 101(5), while a "debt" is the "liability on a claim," 11 U.S.C. § 101(12).  Accordingly, AmRhein holds a "claim" against the Debtor, while the Debtor owes a "debt" to AmRhein.

[5] Because AmRhein has argued that "the debtor admitted that he failed to schedule a pre-petition debt that he owed [to AmRhein]," AmRhein Post-Trial Brief at 6, ECF No. 104, Oct. 28, 2020, the Court assumes for the purposes of this case, and without opining as to its relevance in any future case, that a debtor's subjective intent is a factor to be considered in determining whether a debt has been included in the debtor's schedules.

Debtor to include "everything and anything [the Debtor] may have owed Erich AmRhein."  Trial

Tr. 88:19-20.[6]  This assertion is bolstered by the fact that the $2 million claim included on Schedule

---

[6] More specifically, at the evidentiary hearing, the Debtor also testified:

> Q.     Okay. And what was the total amount of the debt that you listed to Mr. AmRhein?
> A.     $2 million.
> Q.     Okay. And was this a secured debt?
> A.     I don't believe all of it was.
> Q.     So when you say you don't believe all of it was, was part of it unsecured?
> A.     Correct.
> Q.     And what did this debt include, as far as your understanding, when you filed this? What debts were included in this secured and unsecured amount?
> A.     It was any real estate deals that we had going or any ordinary business deals.
> Q.     And you do did -- you do not dispute that you owe -- or at the time, you owed Mr. AmRhein money, correct?
> A.     Correct.
> Q.     And you listed this as a secured debt and unsecured under this particular section?
> A.     Correct.

Trial Tr. 22:23-23:16.

> Q.     Mr. Venuto, what was your intent when you filed -- when you listed Erich AmRhein as a creditor in your bankruptcy petition?
> A.     My intent was that it included everything and anything I may have owed Erich AmRhein.
> Q.     Now you testified that there was a mortgage that you believed you owed Erich AmRhein?
> A.     Yes.
> Q.     And how much was that mortgage for?
> A.     It was the amount that was owed to First Trade Union Bank that he purchased for $208,000.
> Q.     And how much did you owe to that bank?
> A.     At the time that he purchased that was, I believe, the 1.4 million.
> Q.     Okay.
> A.     Or 1.3.
> Q.     But the debt you listed was for two million, correct?
> A.     Yes.
> Q.     So there's a difference of approximately $700,000, correct?
> A.     Yes.
> Q.     And what was that $700,000 to include?
> A.     It was my understanding that it included any other business or any other amount that I may have owed him.
> Q.     And so you included -- so is it fair to say that you included both secured and unsecured debt in that particular section?
>     . . .
> A.     Correct.

Trial Tr. 88:16-89:21.

4

D exceeds the actual amount of the Mortgage debt by $700,000, lending credence to the contention that the Schedule D entry was intended to also include non-Mortgage debt. Further, there was no argument or testimony to indicate that any purpose would have been served, nor can this Court conjure up a purpose, for the Debtor to include the Mortgage debt in his schedules while omitting other unsecured debts owed to AmRhein.

On June 29, 2016, the bankruptcy court clerk's office issued a standard notice of the filing of the Debtor's Chapter 7 bankruptcy case (the "Notice of Case"). That notice provided interested parties with, *inter alia*, notice of the bankruptcy case, the date of the scheduled 341 meeting, the September 26, 2016 deadline for filing objections to the Debtor's discharge or to the dischargeability of a particular debt, and the deadline for filing objections to the Debtor's claimed exemptions. The Notice of Case was served on interested parties through the Bankruptcy Noticing Center (the "BNC"). According to the certificate of notice issued by the BNC, the Notice of Case was sent by first class mail to "Erik Hans Amrhein, P.O. box A, Natick, MA 01760-0002" on July 1, 2016. ECF No. 10. As indicated in the certificate of notice, the BNC automatically added the last 4 digits of the zip code to the address included on the Debtor's creditor matrix, but that automatic adjustment did not render the address incorrect or undeliverable, as at least one notice sent to that address by the BNC was received by AmRhein.[7]

---

| Q. | Mr. Venuto, what was your intent by including Erich AmRhein under the secured section of your bankruptcy petition? |
| --- | --- |
| . . . | |
| A. | It was my intent to put him in there because I had to make sure that anything that I had for business with him was covered on my bankruptcy. |

Trial Tr. 94:4-11.

[7] The Court also notes that the Debtor misspelled AmRhein's first name in both Schedule D and the creditor matrix as "Erik" instead of "Erich." However, there is no indication that this error prevented proper delivery of notices sent by the Court.

AmRhein claims that he never received the Notice of Case and, therefore, had no knowledge that the Debtor's bankruptcy case had been filed.  At trial, AmRhein testified that he had used that post office box address for approximately 30 years and regularly received mail there. He also testified that he had at times failed to receive mail that was supposed to be delivered to him at that address and at other times received mail addressed to other addresses.  Thus, he opines, the Notice of Case must have been lost in the mail.  Regardless of whether AmRhein actually received a copy of the Notice of Case, he testified that he *did* receive a document from this Court in December 2016 which he somewhat cursorily reviewed and then provided to his attorney.

At trial, AmRhein described the document received in December 2016 as a "court judgment" related to the Debtor's bankruptcy case.  Trial Tr. 126:24.  Based on a review of the docket, it is clear that the only communication sent to AmRhein from the Court related to the Debtor's bankruptcy case in December 2016 was the Court's December 12, 2016 Order of Discharge (the "Discharge Order").  The certificate of notice issued by the BNC indicates that the Discharge Order was mailed to AmRhein on December 14, 2016 at the same address used for the Notice of Case.  Accordingly, the Court concludes that the Discharge Order was the "judgment" received by AmRhein in December 2016 and that AmRhein had notice of the entry of discharge in the Debtor's case.

The Discharge Order informed parties that the Debtor had been granted a discharge under § 727 of the Bankruptcy Code and further explained that:

> The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged.  Most, but not all, types of debt are discharged if the debt existed on the date the bankruptcy case was filed.
>
> . . .
>
> **Collection of Discharged Debts Prohibited**

> The discharge prohibits any attempt to collect from the debtor a debt that has been
> discharged. For example, a creditor is not permitted to contact a debtor by mail,
> phone, or otherwise, to file or continue a lawsuit, to attach wages or other property,
> or to take any other action to collect a discharged debt from the debtor.

ECF No. 27, Dec. 12, 2016.

The Debtor's bankruptcy case was officially closed on September 6, 2017.[8] Prior to the case closing, AmRhein took out a private civilian criminal complaint against the Debtor related to the prepetition dishonored checks. In February 2017, the Debtor was arraigned on a charge of larceny by check but was found not guilty in October 2018. More importantly for present purposes, AmRhein also commenced a civil action against the Debtor on October 10, 2017 by filing a complaint in the Superior Court of Middlesex County (the "State Court Action").

Through the original and amended complaints filed in the State Court Action, AmRhein sought various forms of relief against the Debtor based on claims arising from their prepetition rock crushing business, including AmRhein's claims based on the dishonored checks. The amended complaint acknowledged that the Debtor had filed a Chapter 7 bankruptcy case in June 2016 but stated that the Debtor had "committed bankruptcy fraud and perjury, when he failed to disclose all his assets" in connection with the bankruptcy case and that "[s]ince the debts owed by [the Debtor] to AmRhein . . . were incurred as a direct result of [the Debtor's] fraud . . . , those debts were ineligible for discharge in bankruptcy and were therefore never discharged." Debtor Ex. 10. Notably, AmRhein has not raised those arguments before this Court, and the amended complaint did not state that the debt was omitted from the Debtor's bankruptcy schedules.

When a hearing on AmRhein's motion for a temporary restraining order and trustee process in the State Court Action was set for May 2019, the Debtor filed a motion to reopen the bankruptcy case (which was granted) and filed the "Debtor's Motion for Order of Contempt and Sanctions"

---

[8] Because the Chapter 7 trustee reported that there were no assets available for distribution in the case, no deadline for the filing of proofs of claim was set.

presently before the Court (the "Contempt Motion").  In the Contempt Motion, the Debtor asserts

that the filing of the State Court Action violated the discharge injunction imposed by § 524, which

violation may be remedied by the imposition of sanctions for contempt pursuant to § 105(a) of the

Bankruptcy Code.

After some extensive pretrial wrangling over compelling the attendance of a potential

witness, the Court held an evidentiary hearing on the sole issue of contempt (with the issue of

damages, if warranted, to be determined through future proceedings).  Three witnesses testified at

the hearing – the Debtor, AmRhein, and Kevin Nee, one of AmRhein's former tenants.  Following

the trial, both parties were granted the opportunity to submit posttrial briefs, which they did, and

the matter was taken under advisement.


II.    POSITIONS OF THE PARTIES

The Debtor's position regarding the Contempt Motion is relatively straightforward – he

argues that AmRhein's claims against the Debtor were included in the bankruptcy schedules, the

Notice of Case and Discharge Order were mailed to AmRhein at an appropriate mailing address,

AmRhein failed to timely file an action objecting to the dischargeability of any debt owed to

AmRhein, and, therefore, the filing of the State Court Action violated the injunction in § 524

prohibiting any attempt to collect a discharged debt.

Three arguments AmRhein initially raised in his written opposition to the Contempt

Motion (the "Opposition") can be easily disposed of.  First, AmRhein had argued that since the

claim in Schedule D referred to both AmRhein and Martinez, notices from the Court may have

been collected by either party.  However, as evidenced by the creditor matrix and certificates of

notice issued by the BNC, communications from the Court regarding the Debtor's case were

addressed solely to AmRhein.  Second, the Opposition stated that AmRhein "never received any

mail or notice with respect the Debtor's bankruptcy proceeding." Opposition at 2, ECF No. 40, May 28, 2019. However, AmRhein testified at trial that he did, in fact, receive a copy of the Discharge Order. And finally, AmRhein maintained in the Opposition that the post office box address was not an appropriate address for notice and that the Debtor should have used a different street address in Natick, Massachusetts. This argument was directly refuted by AmRhein's own testimony that he used the post office box for approximately 30 years and regularly received and retrieved mail there.

That leaves one remaining argument raised by AmRhein based solely on statutory grounds – namely, that the State Court Action did not violate the discharge injunction because the claim against the Debtor on account of the rock crushing business and dishonored checks was excepted from the Debtor's § 727 discharge by operation of § 523(a)(3), which provides that debts neither "listed nor scheduled" in a bankruptcy case are not discharged if the creditor does not have actual notice of the case in time to file a proof of claim and/or an action objecting to dischargeability under § 523(a)(2), (4), or (6). This argument is premised on two assertions: first, that the non-Mortgage debt was not "properly" listed or scheduled as an unsecured debt and, second, that AmRhein did not have actual knowledge of the case until December 2016, well after the September 26, 2016 deadline for filing an objection to the dischargeability of his claims.

III.    <u>DISCUSSION</u>

Pursuant to § 524, a discharge in a bankruptcy case "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." (the "discharge injunction"). 11 U.S.C. § 524(a)(2). Violations of the discharge injunction are enforced through the bankruptcy court's contempt powers pursuant to § 105(a), and the court may "order damages

if the circumstances so require." *Lumb v. Cimenian (In re Lumb)*, 401 B.R. 1, 6 (B.A.P. 1st Cir.

2009) (citing *Pratt v. Gen. Motors Acceptance Corp. (In re Pratt),* 462 F.3d 14, 17 (1st Cir. 2006)).

To recover damages for an alleged violation of the discharge injunction, a debtor must prove, by

clear and convincing evidence, that the creditor had notice of the debtor's discharge and intended

the actions which constituted the violation. *Kirby v. 21st Mortg. Corp. (In re Kirby)*, 599 B.R.

427, 440 (B.A.P. 1st Cir. 2019) (citing, quoting *Rosado v. Banco Popular de Puerto Rico (In re

Rosado)*, 561 B.R. 598, 605 (B.A.P. 1st Cir. 2017); *Bates v. CitiMortgage, Inc.*, 844 F.3d 300, 304

(1st Cir. 2016).  But importantly (and logically), the discharge injunction under § 524(a)(2) only

"enjoins creditor actions to collect *discharged* debts." *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d

439, 444 (1st Cir. 2000) (emphasis supplied).  Therefore, if, as AmRheim argues, the prepetition

claims on account of the dishonored checks were excepted from discharge under § 523(a)(3), then

the filing of the State Court Action did not, and could not, constitute a violation of § 524(a)(2).

Under § 523(a)(3), a discharge issued to a Chapter 7 debtor pursuant to § 727:

does not discharge an individual debtor from any debt –
. . .

(3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit –

> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

11 U.S.C. § 523(a)(3).  Because § 523(a)(3) is written in the conjunctive, it applies only if the

Court finds that the debt was "neither listed nor scheduled" *and* that the creditor did not receive

10

timely notice of the bankruptcy case. Put another way, regardless of when AmRhein received

actual notice of the case, § 523(a)(3) will not apply if the debt was either listed or scheduled under

§ 521(a)(1).[9]

As to this issue, AmRhein makes much of the fact that although he is included as a creditor

in Schedule D, the debt for the rock crushing business and dishonored checks was not "properly"

listed or scheduled as an unsecured debt on Schedule E/F. But § 523(a)(3) does not refer to debts

that were neither "properly" listed or scheduled – it refers only to debts that were not listed or

scheduled under § 521(a)(1). And § 521(a)(1) similarly contains no reference to "proper" listing

or scheduling. That section, in relevant part, provides that the "debtor shall (1) file – (A) a list of

creditors; and (B) unless the court orders otherwise – (i) a schedule of assets and liabilities." 11

U.S.C. § 521(a)(1).

It is true that courts have used adverbial phrases such as "properly scheduled," "duly

scheduled," and the like when determining whether § 523(a)(3) applies in a particular case. But

in so doing, those courts have not focused on whether a debtor adequately described or properly

characterized a particular type of debt. Instead, they examine whether the name and address

submitted by the debtor "contain information reasonably calculated to provide notice to the

creditor." *Gonsalves v. Belice (In re Belice)*, 2011 WL 4572003, *4 (B.A.P. 1st Cir. March 7,

2011) (quoting *Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval)*, 327 B.R. 493, 507

(B.A.P. 1st Cir. 2005) and collecting cases).[10]  AmRhein cited to no case in which a court

---

[9] Even if a debt is not excepted from discharge by operation of § 523(a)(3), other defenses to a finding of
contempt for a violation of the discharge injunction may exist. Here, however, AmRhein has only relied
on his contention that he did not violate the discharge injunction because the debts at issue were not
discharged pursuant to § 523(a)(3). Therefore, any additional arguments in defense of a contempt finding
have been waived. *Nickless v. FDIC (In re Singh)*, 241 B.R. 484, 490 (Bankr. D. Mass. 1999) ("[a] defense
not raised at trial is waived").

[10] *See, e.g.*, *Omni Mfg., Inc. v. Smith (In re Smith)*, 21 F.3d 660 (5th Cir. 1994); *In re Johnson*, 521 B.R.
912 (Bankr. W.D. Ark. 2014); *Anderson v. Richards (In re Anderson)*, Bankr. No. 99-13230-WCH, Adv.

determined that a debt was not "properly" listed or scheduled under § 523(a)(3) because the debtor

mischaracterized the secured or unsecured status of the debt.  And this Court has found none.[11]

Here, the Court finds that the debt to AmRheim on account of the rock crushing business

and for the dishonored checks was both "listed" and "scheduled" within the meaning of

§ 523(a)(3).

> Listed and scheduled are not terms defined in § 101.  However, they cannot be
> viewed as merely synonymous because such an interpretation makes those terms
> redundant, and Congress is presumed to have intentionally used terms with
> meaning.  Even more to the point, the terms are also found in § 521(a)(1) addressing
> a debtor's duties.  That section requires a debtor to file "a *list* of creditors" and a
> "schedule" of assets and liabilities.  *See* § 521(a)(1)(A), (B)(i).

*In re Mooney*, 532 B.R. 313, 325 (Bankr. D. Idaho 2015).  In this case, the non-Mortgage debt to

AmRhein was "listed" within the meaning of § 523(a)(3) and as required by § 521(a)(1) because

AmRhein was included in the creditor matrix at an appropriate mailing address.  *See id.*; *Meadows*

*v. Hagler (In re Meadows)*, 428 B.R. 894, 903 (Bankr. N.D. Ga. 2010) (debt to creditor landlord

not excepted from discharge under § 523(a)(3) where landlord was included on list of creditors

filed in the case, even though the landlord was not included as an unsecured creditor in the debtor's

schedules).

---

No. 07-1328, 2009 WL 4840871 (Bankr. D. Mass. Dec. 10, 2009); *Mitchell v. Bigelow (In re Mitchell)*,
418 B.R. 282 (B.A.P. 8th Cir. 2009); *United States v. Sepell (In re Sepell)*, Bankr. No. 04-4939, Adv. No.
05-30211-wle, 2007 WL 853842 (Bankr. S.D. Iowa March 12, 2007); *Manzanares v. State Farm Fire &
Casualty Co. (In re Manzanares)*, 345 B.R. 773 (Bankr. S.D. Fla. 2006); *Chanute Prod. Credit Ass'n. v.
Schicke (In re Schicke)*, 290 B.R. 792 (B.A.P. 10th Cir. 2003); *Carpet Servs., Inc. v. Hutchison (In re
Hutchison)*, 187 B.R. 533 (Bankr. S.D. Texas 1995); *In re Lyman*, 166 B.R. 333 (Bankr. S.D. Ill. 1994);
*Oxford Video, Inc. v. Walker (In re Walker)*, 125 B.R. 177 (Bankr. E.D. Mich. 1990); *Stull v. Holt (In re
Holt)*, 102 B.R. 116 (Bankr. S.D. Ohio 1989); *Lubeck v. Littlefield's Rest. Corp. (In re Fauchier)*, 71 B.R.
212 (B.A.P. 9th Cir. 1987); *Devers v. Frankina (In re Frankina)*, 29 B.R. 983 (Bankr. E.D. Mich. 1983).

[11] The lack of emphasis in the case law on exactly how a debtor has categorized or described a debt is not
surprising.  Neither the notice to creditors to alert them to a bankruptcy case filing nor the order of discharge
include the debtor's bankruptcy schedules or statements or alert an individual creditor to the reason why
they are being provided notice of the case or discharge.  "[A]s long as a creditor is listed in the debtor's
initial schedules, the creditor is presumed to be responsible for ascertaining the specific claim it holds."
*Manzanares*, 345 B.R. at 788 (citing *In re Mandukich*, 87 B.R. 296, 300 (Bankr. S.D.N.Y. 1988)).

Furthermore, the Court finds that the non-Mortgage debt to AmRhein was also "scheduled" within the meaning of § 523(a)(3). AmRhein has attempted to impeach the Debtor's credibility on this issue, but as the Court has previously noted, the Court finds that the Debtor's testimony was credible that he intended to include all possible claims AmRhein had against the Debtor by including a debt to AmRhein in the total amount of $2 million on Schedule D. The Court does not find that the Debtor's failure to more fully describe the claim on Schedule D or the Debtor's mischaracterization of a portion of the debt as "secured" versus "unsecured" would render it not "scheduled" under § 523(a)(3). *See Mooney*, 532 B.R. at 325-26 (inclusion of creditor on inappropriate bankruptcy schedule did not except the debt from discharge under § 523(a)(3)); *cf. Caffal Bros. Forest Prods., Inc. v. Braun (In re Braun)*, 84 B.R. 192, 194 (Bankr. D. Or. 1986) (failure of debtor to describe the debt of a scheduled creditor did not except the debt from discharge under § 523(a)(3)). Accordingly, the Court rules that the debt to AmRhein on account of the rock crushing business and dishonored checks was both "listed" and "scheduled," and therefore was *not* excepted from the Debtor's discharge, under § 523(a)(3).

The Court is cognizant that the Supreme Court has recently ruled that a creditor may defeat a finding of contempt for violating the discharge injunction by establishing that there is some "'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, -- U.S. --, 139 S.Ct. 1795, 1804 (2019). AmRhein has steadfastly relied solely on the contention that the discharge injunction does not apply because the non-Mortgage debt was excepted from discharge under § 523(a)(3); he has not argued that he should not be held in contempt because there was a "fair ground of doubt" as to whether the debt was discharged. Therefore, any *Taggart*-based argument against a finding of contempt has been waived. *Singh*, 241 B.R. at 490. However, even if AmRhein argued that there was a "fair ground of doubt," as to whether this unsecured debt was discharged, as this Court previously noted, there is no support in

13

the caselaw for his assertion that the secured or unsecured status of a debt must be correctly characterized for the debt to be "properly" listed and scheduled under § 523(a)(3).

Because the debt at issue was discharged upon the entry of the Discharge Order, the Court finds it unnecessary to determine whether AmRhein actually received the Notice of Case in July 2016.[12]  The Court is left only to decide whether AmRhein (1) had notice of the Debtor's discharge and (2) whether AmRhein intended to take the action that violated the discharge injunction.  The answer to both is clearly in the affirmative.  AmRhein received notice of the discharge injunction when he received a copy of the Discharge Order and despite this notice, AmRhein intended to, and did, file suit against the Debtor to recover a prepetition debt.  Accordingly, the Court will issue an order finding that AmRhein's filing of the State Court Action violated the discharge injunction set forth in § 524(a)(2).

IV.    CONCLUSION

For all the foregoing reasons, the Court will grant the Contempt Motion in part inasmuch as the Court finds and rules that AmRhein is in contempt of the discharge injunction set forth in § 524.  The Court will set a further hearing on the Contempt Motion to determine an appropriate award of damages.  An order in conformity with this Memorandum will issue forthwith.

DATED: July 2, 2021                    By the Court,

                                       Elizabeth D. Katz
                                       United States Bankruptcy Judge

---

[12] For this reason, the Court finds that the testimony of Kevin Nee was irrelevant, as his testimony was directed at establishing that mail sent by Nee to AmRhein's post office box had not been delivered.

14